UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

JOHN MATERA,

                              Petitioner,              11 Civ. 2030

            - against -                                OPINION AND ORDER

UNITED STATES OF AMERICA,

                              Respondent.

————————————————————————————


JOHN G. KOELTL, District Judge:

        The petitioner, John Matera, challenges his conviction and

sentence pursuant to 28 U.S.C. § 2255.  On August 31, 2004,

Matera pleaded guilty before Judge Richard Casey pursuant to a

plea agreement to two counts of conspiring to participate in the

affairs of the Gambino Organized Crime Family through the

commission of racketeering acts, in violation of the

Racketeering Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1692(d).  In particular, Matera pleaded guilty to

two predicate racketeering acts: a conspiracy to murder Frank

Hydell and the operation of an illegal gambling business.  On

October 29, 2004, Judge Casey sentenced Matera principally to

twenty years imprisonment, the maximum sentence under the

statute and the term that the parties had stipulated to in the

plea agreement.

        Matera appealed his conviction, arguing, among other

1

things, that the District Court erred in failing to make an inquiry as to any potential conflict between Matera and Jeffrey Lichtman, his counsel at the plea and sentence, who also represented Thomas Dono, who was then a suspected co-conspirator in the Hydell murder.  The Court of Appeals affirmed Matera's conviction.  United States v. Matera, 489 F.3d 115, 125 (2d Cir. 2007).  The Court explained that Lichtman represented Dono on an unrelated charge after Matera's plea and during his sentencing, and then represented Dono in the Hydell-related charge several years later.  Id.  The Court held that there was no reason to make an inquiry at the time of the plea and no possibility of prejudice at the time of the sentence because Matera had already stipulated to receiving a sentence of twenty years.  Id.

On March 23, 2011, Matera, represented by new counsel, filed the current petition pursuant to 28 U.S.C. § 2255 to vacate his conviction and sentence.  Matera argues that, based on "newly discovered evidence," Lichtman had an actual conflict of interest during plea negotiations and at the time of Matera's guilty plea and sentencing that adversely affected Lichtman's representation of Matera.  Matera claims that Lichtman had a financial interest in representing Dono and that the financial interest was antagonistic to Matera's, and that Lichtman had an attorney-client relationship with Dono, whose interests were antagonistic to Matera's.  Matera claims that the "newly

discovered evidence" consisted of statements that Lichtman made
on March 24, 2010, at Dono's sentencing for involvement in the
Hydell murder, and a tape recording (the "Kasman-Lichtman
recording") previously produced in 2008 to Seth Ginsberg, one of
the attorneys representing Matera on this petition, which Matera
claims he became aware of in June 2010.  Ginsberg Affirm. Ex. I
(Matera Aff. ¶¶ 27-30, Mar. 23, 2011).

This Court held an evidentiary hearing at which Matera,
Dono, Lichtman, and Ginsberg testified.  Having assessed the
credibility of the witnesses and reviewed the documentary
evidence, the Court concludes that the petition is time-barred
and that, in any event, Matera's counsel was not laboring under
a conflict of interest at the relevant times.  Therefore, the
petition must be denied.

The Court makes the following findings of fact and draws
the following conclusions of law.

## FINDINGS OF FACT

### I.

### A.

On April 16, 2003, Matera, along with several co-defendants
including Thomas Carbonaro, was indicted in the Southern District
of New York.  Superseding Indictment, United States v. Matera,
No. 02cr743 (Apr. 16, 2003), ECF No. 33.  The charges against
Matera included a RICO charge as well as substantive charges

relating to the murder of Frank Hydell.  Initially, Matera was
represented by Richard Rehbock and Jeremy Schneider.  Pet'r's
Post-Hr'g Br., Ex. C.  On or about September 20, 2003, Rehbock
was relieved as counsel and Schneider continued to represent
Matera until Matera retained Lichtman.  Tr. 7.[1]  On April 23,
2004, while Matera was still represented by Schneider, the
Government provided Matera with a plea agreement to charges that
Matera conspired to participate in a RICO enterprise through the
predicate acts of the conspiracy to murder Hydell and the
operation of an illegal gambling business.  The plea agreement
capped Matera's sentencing exposure at 20-years' imprisonment.
Pet'r's Post-Hr'g Br., Ex. D.

On or about June 1, 2004, Matera retained Lichtman to
represent him.  Tr. 9; Matera Ex. 1.  At that time, Matera wanted
a lawyer to represent him at trial.  Tr. 25, 193.  After he was
retained by Matera, Lichtman spent a half-day with Schneider
reviewing Matera's case file, which consisted of at least seven
boxes, among other materials.  Tr. 9-10; Matera Ex. 2.  Included
in the materials Lichtman received from Schneider was a copy of
the transcript from  the bail hearing in the Eastern District of
New York for Thomas Dono.  Tr. 11-12; Matera Ex. 2.  The bail
hearing pertained to bank burglary charges that Dono faced in

---

[1]Unless otherwise noted, all references to "Tr." are to the transcript of the
evidentiary hearing in connection with this petition that took place before
this Court on February 14, 2013.

the Eastern District of New York that were unrelated to the
Hydell murder, but the Government referred to Dono's involvement
in that murder in support of its argument at the bail hearing.
Tr. 11-12; Pet'r's Post-Hr'g Br., Ex. J.

After being retained in June, Lichtman began preparing for
trial by going through the documentary evidence, preparing cross-
examinations of potential witnesses, and investigating possible
impeachment evidence.  Tr. 24.  Later in the summer, as trial
approached, Matera urged Lichtman to work out a plea agreement.
In one letter to Lichtman, dated August 16, 2004, Matera wrote
"all the brains in the world sometimes can't win a case like
this."  GX 16.  Matera continued:

> First, I'm going to try and put this globle [sic] plea
> together.  Let me deal with these guys. We need a
> codefendant meeting. . . I am confident we can put this
> together. This is what we want. This is why we need to meet,
> and put work in to make it go.  I hate when you say it's not
> going to happen because its [sic] your job to make it
> happen.  But if this is a trial, we have lots of things to
> do.

GX 16.  Matera ended the letter with a postscript: "P.S. Huck
[Carbonaro] and I are the only ones on Hydell, so if we both
plead, that's a benefit for the prosecutors."  GX 16.

**B.**

On August 31, 2004, a one count Information, S7 02 Cr. 743
(RCC), was filed against Matera alone.  The Information charged

Matera with a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).  Matera was charged with conspiring with others to participate in the conduct of the affairs of the Gambino Organized Crime Family through a pattern of racketeering activity.  The information alleged two predicate racketeering acts committed by Matera in furtherance of that racketeering conspiracy: (1) conspiring to murder Frank Hydell on or about April 28, 1998; and (2) conducting an illegal gambling business from in or about January 1998 through in or about April 2003. See Pet'r's Post-Hr'g Br., Ex. D (Superseding Information, United States v. Matera, No. 02 Cr. 743 (S.D.N.Y. Aug. 31, 2004)).

On the same day the information was filed, Matera waived indictment and pleaded guilty to the Information pursuant to a plea agreement with the Government.  Both Matera and his then-counsel, Lichtman, signed the agreement.  The plea agreement capped Matera's sentencing exposure at 20-years' imprisonment. GX 10.  The plea agreement allowed the defendant to argue for the sentence to be imposed concurrently with the 97-month sentence he was then serving that had been imposed in the Eastern District of New York for racketeering charges.  GX 10.  The Government also retained the right to oppose that argument.

At Matera's change of plea hearing the same day, Judge Casey explained in detail the constitutional rights Matera would be

waiving upon entering a guilty plea.  GX 11 (Plea Tr. 7-12, Aug.

31, 2004).  Matera stated he was pleading guilty voluntarily.

Plea Tr. 12. Matera stated that he understood that by pleading

guilty, he was waiving his right to a jury trial.  Plea Tr. 7-8.

Matera also acknowledged that he was "very much" satisfied with

his attorney, Lichtman.  Plea Tr. 6.  Matera explained his

crimes to the Court as follows:

> On or about January 1998 through April 2003, in the
> Southern District of New York, in the Eastern District of
> New York, and elsewhere, I was a part of a group of
> individuals associated in fact conspired to engage in
> activities which affected interstate commerce.  As part of
> this association in fact, I participated in a pattern of
> racketeering activities. . . .
>
> From January 1998 through April 28th, 1998, in the Southern
> District of New York, the Eastern District of New York and
> elsewhere, I had conspired with others to murder Frank
> Hydell.  Specifically, I alerted other individuals as to the
> location of Hydell, knowing that these other individuals
> were coming to kill Frank Hydell.
>
> I knew when I committed this act that it was illegal.
>
> In January 1998 up to and including April 2003, in the
> Southern District of New York, the Eastern District of New
> York and elsewhere, I operated and aided and abetted others
> in the operation of a bookmaking operation. . . .
>
> My role included collecting debts owed to the gambling
> operation.  I knew when I committed these acts that they
> were illegal.

Plea Tr. 13-15.  The Court concluded that the defendant's plea

was knowing and voluntary, and that there was an independent

factual basis for the plea, and consequently accepted the plea.

Plea Tr. at 16.

After his guilty plea, Matera wrote Lichtman additional letters.   On October 4, 2004, Matera wrote to Lichtman to ask Lichtman to speak to the prosecutor to convince the Government to take no position at sentencing, presumably about whether Matera's sentence should run concurrently with the undischarged portion of the sentence Matera was then serving for his conviction in the Eastern District of New York.   GX 17.

On October 19, 2004, Lichtman sent the Pre-Sentence Report ("PSR") to Matera.  GX 19.  The Probation Department recommended that the sentence run concurrently with the Eastern District sentence that Matera was then serving.  On October 21, 2004, Matera expressed approval to Lichtman about the PSR, writing "I like what it says."  GX 18.

Before his sentencing, Matera also wrote a letter to the New York Daily News, in response to false rumors that Matera was cooperating with the Government.  Tr. 217.  In the letter, Matera wrote, "I am not cooperating against Peter Gotti.  I'm going to jail for killing a rat.  I'm not proud of this.  I'm just proud I'm not a rat.  I never was."  GX 7. He added, "all I have is my name left, and I'm going to prison for a long time." GX 7.  In its article about Matera's letter, the Daily News also reported that Matera had a large tattoo across his back, depicting a courtroom scene with a rat in a witness box next to a judge,

with the words, "12 Jurors, One Judge, Half a Chance." GX 7. Matera denied that the article correctly described his tattoo. Tr. 218.

C.

On October 29, 2004, Judge Casey sentenced Matera principally to a term of 240 months' incarceration.  The Guideline Sentencing Range for the offense to which Matera pleaded guilty was 360 months to life, but the statutory maximum sentence of imprisonment for the offense was 240 months.  The plea agreement provided that it was the intent of the parties that a twenty year term of imprisonment "should be imposed." GX 10, at 6. The one area that remained open for argument under the plea agreement was whether the sentence should run concurrently with the sixteen months remaining on the term of Matera's sentence for his conviction in the Eastern District of New York.

During the sentencing proceeding, Lichtman argued for the sentence to be imposed concurrently with the Eastern District sentence.  While Matera now faults the ardor of Lichtman's advocacy before Judge Casey, a fair reading of the transcript indicates that while Lichtman acknowledged the seriousness of the offense of conviction, he argued strenuously that the Court should afford Matera "a very minor break" by providing for a concurrent period of sixteen months on the two sentences.  GX 13 (Sentencing Tr. 4-6, Oct. 29, 2004).  Lichtman argued that

Matera had "made an effort to change his life" since he had been imprisoned on the Eastern District offense in 1999, including the completion of numerous programs in prison.  Sentencing Tr. 5.

Lichtman also pointed to the Probation Department's recommendation for a concurrent sentence, as stated in the PSR.  Judge Casey, however, noted that the Probation Department had been unaware of the letter to the Daily News.  Sentencing Tr. 6.  Judge Casey questioned whether Matera was truly remorseful for  the Hydell murder, given that Matera wrote the letter after his guilty plea.  Sentencing Tr. 6-7.  Lichtman unsuccessfully attempted to persuade the Court that the letter was caused by the defendant's concern that the defendant or his family would be in danger if he were thought to be a cooperating witness.  Sentencing Tr. 6-7.  In response to Lichtman's arguments, the Court also noted the tattoo that had been mentioned in the Daily News.  Sentencing Tr. 8.

After Lichtman concluded his mitigation argument, Matera apologized to Hydell's  family, stating: "You know, we were very friendly, and this was a mistake, and I apologize."  Sentencing Tr. 9.  At the conclusion of the hearing, Judge Casey sentenced Matera principally to 240 months of imprisonment to run consecutively with the undischarged portion of Matera's Eastern District sentence.  Sentencing Tr. 10.

While Matera now attempts to fault Lichtman's advocacy at sentencing, contemporaneously, Matera expressed his satisfaction.  On October 29, 2004, Matera wrote to Lichtman as follows:

> Well my friend, it's over.  I really was not surprised by the Judge's doing.  . . . I'm not mad. I'm really happy, It's over, I know what I have to do!  I want you to know, I know you tried, I saw how you were pleading with this Judge.  The truth is, no matter what you did or said, and even if I didn't write that letter [to the Daily News], this Judge would of [sic] done the same thing.

GX 20.  Matera ended his letter with, "Tell Tommy [Dono] I said Good Luck.  Tell him I hope I don't see him . . . I'll see you in 19. That's 2023 . . . But that's better than Frank Hydell's release date!"   GX 20.

### D.

Matera bases his charges of an actual conflict of interest on an argument that Lichtman had begun representing Thomas Dono in June or July 2004, before Matera had pleaded guilty before Judge Casey on August 31, 2004.  However, the credible evidence indicates that Lichtman did not represent Dono until September 1, 2004, when Lichtman signed a retainer agreement with Dono to represent Dono in the Eastern District bank burglary case that was unrelated to the Hydell murder.  While Lichtman and Dono had prior preliminary conversations that Lichtman considered to be privileged, Lictman delayed representing Dono until it was clear that he was not committed to Matera's trial.  And even then, his

representation of Dono at that time was unrelated to the Hydell
murder. The facts relating to Lichtman's representation of Dono
are as follows.

1.

On September 9, 2003, Thomas Dono was charged in the Eastern
District of New York with RICO violations and bank burglary
charges. These charges were unrelated to the murder of Frank
Hydell. Pet'r's Post-Hr'g Br., Ex. M.  Dono was initially
represented by Richard Rehbock.  Id.; Tr. 139.

At Dono's bail hearing on September 25, 2003, the
Government disclosed to the Magistrate Judge that a cooperating
witness had identified Dono as a participant in the Hydell
murder, but that the Government was not in a position to disclose
whether Dono would be charged in that murder. Ginsberg Affirm.,
Ex. D (Bail Tr. 18-19, 48, Sept. 22, 2003). At the subsequent
bail hearing before the District Court Judge, the Government
stated that:

> The government has learned  that Dono participated in . . .
> the murder of Frank Hydell and that there was a heated
> confrontation outside John [Matera's] . . . house. It was
> John [Matera] who lures his good friend Frank Hydell to the
> location where Hydell was murdered . . . in front of John
> Matera, . . . and John Matera basically called out to Mr.
> Dono saying why did you kill him in front of me, I told you
> not to kill him in front of me.

Pet'r's Post-Hr'g Br., Ex. J (Bail Tr. 5, Sept. 25, 2003).

Lichtman was aware of Dono's possible involvement in the

Hydell murder because the bail hearing transcript was one of the items that he picked up from Jeremy Schneider when Lichtman began his representation of Matera in June 2004.  Tr. 11-12.

**2.**

Lichtman met Dono at least by the summer of 2004 because Lichtman was sharing office space with another attorney at the time, John Meringolo, who represented Dono's co-defendant Edmund Boyle in the Eastern District bank burglary case.  Tr. 56.  Dono and Boyle would come to the office to meet with Meringolo. Tr. 56.  While Dono was at the shared offices, Lichtman and Dono had short, informal conversations, sometimes about general strategies for Dono's case.  Tr. 52, 57, 59, 145-46.  Lichtman did not have Dono's file and had not been retained to represent Dono at that time.  Tr. 52.  Although these conversations occurred before Dono formally retained Lichtman, Lichtman considered the conversations to be privileged.  Tr. 53; GX 5 (Lichtman Affirm. ¶ 5, May 31, 2011).

In around late July or early August 2004, Dono decided to replace Richard Rehbock, his attorney on the bank burglary case. Tr. 48, 50, 141-43.  Dono asked Lichtman to represent him but Lichtman declined because he was too busy with Matera's defense and with an investigation of John Gotti, Jr.  Tr. 50-51, 61.  It was clear that Lichtman would only represent Dono if Lichtman's work on Matera's case ended, such as by Matera's pleading

guilty.  Tr. 61, 77, 153.  Based on Dono's testimony that
Lichtman told him he had a "conflict," Tr. 147, the petitioner
argues that Lichtman believed at the time that he was legally
conflicted from representing both Dono and Matera.  However,
Dono testified that Lichtman never told him it was a legal
conflict, Tr. 159, and Lichtman testified credibly that he could
not represent Dono not because of a formal, legal conflict but
rather because he did not have the time to represent Matera in a
trial, be involved in the investigation of John Gotti, Jr., and
represent Dono in Dono's case at the same time.  Tr. 61.

Accordingly, Lichtman suggested that Dono talk with James La
Rosa, a prominent criminal defense attorney, with whom Lichtman
also shared office space.  Tr. 50, 52.  Dono and La Rosa reached
a verbal agreement that La Rosa would represent Dono, but Dono
became uncomfortable when La Rosa took a two-week vacation soon
after La Rosa agreed to represent him.  Tr. 149.  Soon
thereafter in late August 2004, Dono became aware of plea
discussions for various defendants in Matera's case, although
some of those pleas did not come to fruition.  Tr. 150-51.
Shortly before Matera's guilty plea on August 31, 2004, Lichtman
informed Dono of Matera's impending plea, and Lichtman and Dono
discussed terms of a retainer agreement in the event that the
plea was accepted by the Court.  Tr. 65, 150, 152.

**3.**

On September 1, 2004, following Matera's plea the previous day, Dono signed a formal retainer agreement with Lichtman and paid the initial down payment of $60,000.  GX 15; Tr. 78, 152. On September 8, 2004, Dono met with Lichtman, whom the Pre-Trial Services Report described as Dono's "new attorney."  Matera Ex. 3 (Pretrial Services records describing Dono's visits to Lichtman's office); Tr. 80.  On September 20, 2004, Lichtman was substituted as Dono's counsel in the Eastern District burglary case.  Pet'r's Post-Hr'g Br., Ex. M.   Dono pleaded guilty in that case on January 25, 2005 and, on June 3, 2005, Dono was sentenced principally to 31 months' imprisonment.  Id.

On June 11, 2008, Dono was indicted in the Southern District of New York on charges relating to the murder of Frank Hydell.  Pet'r's Post-Hr'g Br., Ex. P.  Dono signed a new retainer agreement with Lichtman to have Lichtman represent him in connection with that case.  Tr. 162.  Dono eventually pleaded guilty to the conspiracy to murder Hydell and to a gambling conspiracy charge, and received the statutory maximum sentence of 15 years' imprisonment.  See Ginsberg Affirm., Ex. N (Dono Plea Agreement), at 1; id., Ex. O (Sentencing Tr. 10, Mar. 24, 2010).

**E.**

Following his guilty plea and sentencing, Matera appealed

his conviction on various grounds.  In a supplemental pro se brief, Matera asserted that the District Court committed reversible error by failing to "make an initial inquiry as to any potential conflict of interest" between Matera and Lichtman, who represented "another defendant [Thomas Dono] in an unrelated RICO conspiracy who was also suspected" of participating, along with Matera, in the conspiracy to murder Frank Hydell.  GX 12. In the brief, Matera claimed that both Lichtman and Rehbock had informed Matera of their "dual representation" of Matera and Dono, and that the attorneys said they would have to inform the District Court of a "potential conflict."  GX 12.

On May 30, 2007, the Court of Appeals for the Second Circuit affirmed Matera's conviction.  United States v. Matera, 489 F.3d 115, 125 (2d Cir. 2007).  The Court rejected Matera's ineffective assistance of counsel arguments, noting that Lichtman did not represent Dono until after Matera pleaded guilty.[2]  Id.  The Court held that because the trial judge was not aware of any purported conflict, there was no reason to make any inquiry. Id.  The Court also held that Matera could not show the possibility of prejudice because he pleaded guilty before the potential conflict arose, and received the sentence that he had

---

[2] The Court of Appeals mistakenly noted that Lichtman was appointed to represent Dono on September 20, 2004.  As described above, Dono retained Lichtman to represent him on or about September 1, 2004, and Lichtman was substituted as counsel for Dono on September 20, 2004.  GX 15; Tr. 78, 152.

stipulated to in the plea agreement.  Id.  The Supreme Court
denied Matera's petition for certiorari on October 9, 2007.

**F.**

The circumstances surrounding the filing of the current
petition are as follows.

In an unrelated case in 2008 (United States v. Agate, 08-cr-
76 (JBW) (E.D.N.Y)), the Government produced approximately 500
hours of consensual recordings made by a cooperating witness,
Lewis Kasman.  One recording, dated August 3, 2005, includes a
short conversation between Lichtman and Kasman, in which Lichtman
explains that he "picked up" the Dono case after it came to
light that Richard Rehbock had been secretly taped and made
various comments that led to Dono's firing him.  Pet'r's Post-
Hr'g Br., Ex. R.  Specifically, Lichtman states:

> Richie [Rehbock]'s getting taped. . . . so Richie on tape is
> caught talking about . . . Tommy Dono. He's talking to John
> about Tommy Dono—completely violating the attorney-client
> privilege to another client. He immediately gets thrown off
> of the Dono case. I pick the Dono case up and did a great
> job. The kid loves me to death, okay.

Id.

Ginsberg, Matera's present attorney, was counsel of record
for one of the defendants charged in the Agate case, and in that
capacity received all of the Kasman tapes in 2008 as part of the
Government's discovery.  Tr. 175.  At that time, Ginsberg
listened to the Kasman-Lichtman recording and, as a courtesy to

17

Lichtman, sent Lichtman a copy of the recording in April 2008. GX 2.

Ginsberg first worked on a matter related to Matera in March 2008, when Charles Carnesi, Matera's then and current attorney, hired Ginsberg to assist in contesting the Government's effort to hold Matera in contempt for refusing to testify before a grand jury.  Tr. 169, 180.  In July 2008, Ginsberg first met Matera in person at the Metropolitan Detention Center when Ginsberg ran into Matera while visiting another client.  Tr. 169-70.  Matera talked to Ginsberg about filing a § 2255 motion on Matera's behalf, based on Matera's belief that at the time of his plea before Judge Casey, Lichtman had a conflict of interest because Lichtman also represented Tommy Dono.  Tr. 170.  Previously in 2008, Matera had spoken with another attorney, Zachary Margulis-Ohnuma, about filing a § 2255 motion based on the same contention.  Tr. 171, 203-04.  After meeting with Matera more formally about the matter, Ginsberg reviewed the claim by looking over Matera's file and speaking to Lichtman.  Tr. 171-72. Lichtman told Ginsberg that Lichtman had not represented Dono until after Matera pleaded guilty.  Tr. 171.  Ginsberg informed Matera of the results of his investigation.  Tr. 172.

In May 2010, Ginsberg again received the Kasman-Lichtman recording in discovery in another unrelated case. Tr. 175. After again reviewing the recording, Ginsberg began investigating

Matera's conflict claim again and claims that the Kasman-Lichtman recording "tipped the scales" in favor of bringing the current petition.  Tr. 175.  Matera, represented by Ginsberg, then filed this petition on March 23, 2011.

## CONCLUSIONS OF LAW

## II.

The petition should be dismissed because it is barred by the statute of limitations.

## A.

To challenge his sentence under 28 U.S.C. § 2255, a petitioner must comply with its applicable one-year statute of limitations, which provides as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). "For the purpose of starting the clock on 2255's one-year limitation period, . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari." Clay v. United States, 537 U.S. 522, 525 (2003).

Matera's conviction became final on October 9, 2007, when the Supreme Court denied his petition for certiorari. Therefore, this petition is time-barred unless another provision of § 2255(f) applies. Matera claims that this petition is timely under § 2255(f)(4)—namely, that the Kasman-Lichtman recording is newly discovered evidence that he could not have discovered earlier through the exercise of due diligence. Matera contends that this petition is timely because it was filed within one year of May 2010, the first time Ginsberg received the tapes while aware of Matera's ineffective assistance counsel claims. Matera argues that he could not have discovered the tape prior to that time.[3]

Where a petitioner relies on newly discovered evidence, the statute of limitations period runs "when the facts supporting the

---

[3] In his initial petition to this Court, prior to the evidentiary hearing, Matera contended that Lichtman's statements at Dono's March 2010 sentencing hearing were also newly discovered evidence in support of his claim. See Mem. in Supp. of Pet. at 21. Matera no longer relies on that argument. See Pet'r's Post-Hr'g Br. at 44-45; Tr. 205, 209. In any event, the sentencing hearing did not disclose any information about Lichtman's representation of Dono that Matera could not have obtained more than one year prior to bringing the current motion.

claim or claims presented could have been discovered through the exercise of due diligence . . . regardless of whether petitioner actually discovers the relevant facts at a later date." Wims v. United States, 225 F.3d 186, 188 (2d Cir. 2000). Section 2255(f)(4) "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." Id. at 190 & n.4. "[I]t is the Petitioner's burden to demonstrate why he was unable to discover the factual predicate of his claim before the date asserted." Perez v. United States, No. 01cr0848, 2011 WL 2471274, at *2 (S.D.N.Y. June 18, 2011) (citation and quotation marks omitted).

**B.**

As an initial matter, there is nothing in the Kasman-Lichtman recording that contains "facts supporting" Matera's claims. See 28 U.S.C. § 2255(f)(4). The Kasman-Lichtman recording does not indicate the date that Lichtman began representing Dono or the date that he began to have preliminary discussions with Dono about the Eastern District bank burglary case. In the recording, which was made on August 3, 2005, Lichtman explains that when the prior taped conversation of Rehbock came to light, which occurred in late July of 2004, "Rehbock immediately gets thrown off of the Dono case. I pick the Dono case up and did a great job." Pet'r's Post-Hr'g Br., Ex. R. While the recording indicates that Dono immediately

decided to seek new representation, it says nothing about when Lichtman began representing Dono.  Tr. 47, 113.

It is clear that after Dono decided to replace Rehbock, there was a period of time before Rehbock was actually replaced. And, as Dono stated at the hearing, after deciding to fire Rehbock, Dono verbally agreed to hire James LaRosa as his lawyer.  Tr. 148-49; see also Tr. 113-14.  Therefore, the alleged newly-found appreciation of the Kasman-Lichtman recording provides no facts that buttress Matera's contention that Lichtman was simultaneously representing both Matera and Dono.  Accordingly, Matera cannot avail himself of § 2255(f)(4). See Wilson v. United States, No. 97cv2945, 1998 WL 205303, at *4 (S.D.N.Y. Apr. 28, 1998) (dismissing petition as time-barred where purported newly discovered evidence did not show "facts supporting" the petitioner's claim under § 2255(f)(4)).

### C.

Moreover, the Kasman-Lichtman recording was not evidence that was newly discovered in the one year preceding the filing of the current § 2255 motion.  While Matera argues that he could not have discovered the tapes until May 2010 when Ginsberg received them again while representing Matera, the record reveals that the tapes were available to Matera earlier.

Ginsberg testified that he obtained the Kasman tapes in March 2008 in discovery in the Agate case.  Tr. 175.  Ginsberg

22

was clearly aware of the Lichtman portion of the tapes because he sent that portion to Lichtman as a courtesy.  Tr. 175. Matera contacted Ginsberg in July 2008 to assist him in bringing a § 2255 petition and explained the basis of his petition—that Lichtman purportedly had a conflict by representing Dono and Matera simultaneously.  Tr. 170.  Ginsberg then investigated this claim further on behalf of Matera before finding it to be without merit.  Tr. 170-71.  Therefore, Ginsberg had the Lichtman-Kasman recording available to him in July 2008 when he was considering Matera's request concerning a § 2255 petition. See Balagula v. United States, 73 F. Supp. 2d 287, 291 (E.D.N.Y. 1999) (dismissing petition as time-barred under § 2255(f)(4) when purportedly new evidence had been in the possession of petitioner's counsel but was not "properly reviewed and analyzed" until several years later).

Ginsberg's claim that he did not appreciate the significance of the recording in 2008 is irrelevant to the § 2255 statute of limitations.  Under § 2255(f)(4), "Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance." Owens v. Boyd, 235 F. 3d 356, 359 (7th Cir. 2000); Gonzalez-Ramos v. United States, No. 05cv3974, 2007 WL 1288634, at *7 (S.D.N.Y. May 2, 2007).  Because the Kasman-Lichtman tapes were available to Matera over one year before he brought this

23

petition, the petition is untimely.

### D.

Finally, even without the Kasman-Lichtman recording, Matera was aware of the basis for his current § 2255 motion more than one year prior to the time it was brought and, through "the exercise of due diligence" could have developed any further facts necessary to his claim.  See 28 U.S.C. § 2255(f)(4). Matera's claim that Lichtman was ineffective is based on an alleged actual conflict that Lichtman had in representing both Matera and Dono during the time leading up to Matera's guilty plea.  The record reveals that Matera was aware that Lichtman represented Dono in the Eastern District case, and Matera at any time could have asked Lichtman or Dono the date on which Lichtman began representing Dono.

Lichtman testified credibly that before Matera's plea to the charges relating to the Hydell murder and while Dono had been coming to Lichtman's shared offices in the summer of 2004 to discuss the Eastern District burglary case, Lichtman would discuss Dono with Matera because Dono and Matera "were close" and "friendly."  Tr. 94.  Lichtman also testified credibly that he told Matera that Dono "may be hiring me but I can't physically do the work.  I can't have your trial and be able to handle his trial that is going to start in January when your case, John's case was to last until the end of the year

perhaps." Tr. 95. By late October 2004, Matera plainly knew that Dono had retained Lichtman and he expressed no reservations about that at the time. On October 29, 2004, after he had been sentenced, Matera wrote to Lichtman: "Tell Tommy I said good luck." GX 20. Matera testified that he knew at the time of his sentencing that Lichtman was representing Dono. Tr. 218.

In Matera's 2006 pro se supplemental brief to the Court of Appeals, Matera expressly stated that both Lichtman and Rehbock had "informed the Appellant of their dual representation of Dono and the Appellant; that Dono was a suspect in the Hydell murder conspiracy; and that as a result, they would have to inform the district court of the 'potential' conflict." GX 12. Thus, in 2006, Matera professed to know of the timing of Lichtman's representation of Dono and could have brought his §2255 petition at that time after the Court of Appeals had rejected the argument on direct appeal.

Matera contends that he attempted to determine the precise details of Lichtman's representation of Dono, but was unsuccessful. Those inquiries provide no basis to claim that the current petition is timely. In 2008, Matera engaged Zachary Margulis-Ohnuma to investigate his claim. Margulis-Ohnuma spoke to Dono and found that Dono "did not retain Mr. Lichtman until after Mr. Matera had pled guilty"—a factually true statement. Tr. 171. Ginsberg testified that he spoke to Lichtman in 2008,

and Lichtman said that he "didn't represent Mr. Dono until after
Mr. Matera had taken his plea," and Lichtman pointed to the
Court of Appeals decision.  Tr. 171.  The record in this case
supports both statements by Dono and Lichtman.  There is nothing
in the evidence to suggest that Dono or Lichtman was not
cooperative with Matera and his lawyers.

     The public record indicated that within three weeks of
Matera's guilty plea, Lichtman was substituted as a lawyer on
Dono's behalf in the Eastern District burglary case.  See Pet'r's
Post-Hr'g Br., Ex. M.  Indeed, the Court of Appeals noted that
fact in its opinion.  If Matera and his lawyers had wanted to
know the details of when preliminary discussions started they
simply could have asked.  There is no evidence that Dono or
Lichtman were un-cooperative or provided any incorrect
information.  Dono testified as a witness for Matera at the
hearing and was plainly friendly with Matera.  Tr. 155-56.
Ginsberg never contacted Dono to seek facts related to the claim
of a conflict until shortly before the hearing.  Tr. 166-67.

     Matera did not become aware of any new facts that he did
not know or could not have discovered with reasonable diligence
within one year of bringing the current § 2255 motion.  See
Perez v. United States, No. 02cv0648, 2002 WL 1997886, at *2
(S.D.N.Y. Aug. 28, 2002) (rejecting petitioner's argument that
he was "unaware of the true facts for an extended period of

time" when he "had all of the information necessary" to file the § 2255 motion earlier).  Therefore, the motion is barred by the one year statute of limitations.

### III.

The petition must also be denied because it is without merit. Matera contends that his conviction should be vacated because Lichtman was ineffective in that he labored under an actual conflict of interest that adversely affected Matera because it caused Lichtman to advise Matera to plead guilty instead of proceeding to trial, which he claims was a viable alternative. Matera contends that Lichtman had an actual conflict of interest because he formed an attorney-client relationship with Dono, whose interests were antagonistic to Matera's, and Lichtman's personal and financial interests in representing Dono caused Lichtman's interests to diverge from Matera's. For the reasons that follow, Matera's claims fail.

### A.

The Sixth Amendment right to assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest.  See, e.g., Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Schwarz, 283 F.3d 76, 90 (2d Cir. 2002).  This right would be violated if the attorney has "(1) a potential conflict of interest that result[s] in

prejudice to the defendant, or (2) an actual conflict of interest that adversely affect[s] the attorney's performance." United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994). "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." Schwarz, 283 F.3d at 91 (internal quotation marks omitted). An attorney has a potential conflict of interest if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." United States v. Kliti, 156 F.3d 150, 153 n.3 (2d Cir. 1998); see also Ramirez v. United States, No. 09cv4397, 2011 WL 1795145, at *6 (S.D.N.Y. May 6, 2011).

**B.**

In this case, Matera has expressly declined to argue that Lichtman suffered from a potential conflict of interest and has not attempted to show he was prejudiced in any way by Lichtman's representation. See Pet'r's Post-Hr'g Br. at 25; Pet'r's Reply Br. at 28. Rather, Matera alleges Lichtman had an actual conflict of interest. In order to establish an actual conflict of interest has adversely affected the performance of defense counsel, the petitioner must show that counsel's interests diverged from the petitioner's on some material legal or factual

issue and resulted in an "actual lapse in representation."  See
Triana v. United States, 205 F.3d 36, 41 (2d Cir. 2000) (quoting
Cuyler v. Sullivan, 446 U.S. 335, 348-49 (1980)); see also
United States v. O'Neil, 118 F.3d 65, 71 (2d Cir. 1997).  This
is a three-part showing.  First, the petitioner must show an
actual conflict of interest, that is, that the "attorney's and
defendant's interests diverge with respect to a material factual
or legal issue or to a course of action."  United States v.
Moree, 220 F.3d 65, 69 (2d Cir. 2000) (internal citations and
quotation marks omitted).  Second, the petitioner must
demonstrate an "actual lapse in representation" that resulted
from the conflict.  An actual lapse in representation is
demonstrated by the existence of some "plausible alternative
defense strategy not taken up by counsel."  Id.  In this regard
Matera does not need to show that the alternative defense "would
necessarily have been successful."  Id. (internal quotation
marks and citations omitted).  It would be sufficient to show
that the alternative strategy "possessed sufficient substance to
be a viable alternative."  Id. (internal quotation marks and
citations omitted).  Third, Matera must show that the
alternative defense was "inherently in conflict with or not
undertaken due to the attorney's other loyalties or interests."
Id. (internal quotations marks and citations omitted) (emphasis
in original).  In other words, Matera must show that "trial

counsel chose not to undertake [the alternative strategy] because of his conflict." _Winkler v. Keane_, 7 F.3d 304, 309 (2d Cir. 1993); _see also_ _Garcia-Giraldo v. United States_, 691 F. Supp. 2d 500, 514 (S.D.N.Y. 2010).

**1.**

As to the first part of this test, Matera makes several arguments for why there was an actual conflict of interest that caused Lichtman's interests to diverge from Matera's.  Matera argues that Lichtman developed an attorney-client relationship with Dono and that Dono's legal interests were antagonistic to Matera's.  Matera also argues that Lichtman had a financial interest in pressuring Matera to plead guilty so that Lichtman could represent Dono.  Finally, Matera points to disagreements between himself and Lichtman to argue that their relationship was frayed and Lichtman was not truly preparing the case for trial.  For the reasons that follow, none of Matera's arguments support the existence of an actual conflict in this case.

**a.**

Matera first argues that there was an actual conflict of interest due to Lichtman's simultaneous representation of Matera and Dono.  However, "dual representation, standing alone, does not suffice to demonstrate actual conflict." _United States v. Blau_, 159 F.3d 68, 75 (2d Cir. 1998).  Thus, a petitioner claiming an actual conflict based on dual representation must

still show that the dual representation caused "the attorney's and [petitioner's] interests [to] diverge with respect to a material factual or legal issue or to a course of action." United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003) (citing Schwarz, 283 F.3d at 91). In this case, Matera cannot even show that there was dual representation until after his guilty plea, and he cannot show that Matera and Lichtman's interests diverged with respect to any factual or legal issue or course of action.

The credible evidence establishes that Lichtman did not represent Dono until after Matera's guilty plea. At the time of Matera's guilty plea, Dono was accused of participating in robberies that were unrelated to the Hydell murder. Dono was not charged with crimes relating to the Hydell murder until June 2008, almost four years after Matera was sentenced. Matera cannot show the existence of an actual conflict from Lichtman's representation of Dono in the Eastern District burglary case which only began after Matera pleaded guilty. Matera also cannot show an actual conflict based on Lichtman's representation of Dono four years later concerning the Hydell murder because that representation began years after Lichtman's representation of Matera had concluded. While Matera points to the preliminary discussions that Lichtman had with Dono about the Eastern District burglary case before Dono formally retained Lichtman, there is no evidence that those conversations tainted

31

Lichtman such that he was disabled in any way from representing
Matera in connection with the charges in the Southern District
case relating to the Hydell murder.

Matera points to Dono's testimony that Lichtman told Dono in
the summer of 2004 that he could not represent Dono while also
representing Matera because Lichtman had a "conflict," but there
is no evidence that this was a *legal* conflict.  Dono testified
that Lichtman never told Dono that he had a legal conflict.  Tr.
159.  Rather, as Lichtman explained, the "conflict" was that
during the summer of 2004, Lichtman was representing both Matera
and John Gotti Jr., and was too busy to accept another client.
Tr. 36-37.

Moreover, there is no plausible argument that Lichtman's
interests differed from Matera's with respect to any material
legal issue or course of action.  Matera contends that a conflict
existed because Lichtman would have been unable to cross-examine
Dono had the Government called Dono as a witness at Matera's
trial.  However, by the summer of 2004, Dono had already been
identified as a participant in the Hydell murder.  If called by
the Government at Matera's trial, Dono would have certainly
asserted his Fifth Amendment privilege against self-
incrimination.  Because he was suspected of participating in  the
murder, there is no plausible argument that the Govement would
have granted Dono immunity to testify, and, as a result, Dono

32

would not have testified at all.

Matera also argues that Lichtman's interests diverged from Matera's because by representing Dono, Lichtman was barred from pursuing any strategy that would adversely affect Dono, such as shifting the blame for the murder to Dono.  This argument overstates Lichtman's involvement with Dono before Matera's guilty plea.  While there were preliminary discussions about the Eastern District burglary case which Lichtman considered to be privileged, Lichtman did not begin to represent Dono until Matera had pleaded guilty.

In any event, there is no evidence that Matera's proposed strategy would have been plausible in Matera's case.  "To demonstrate a divergence of interests, [Matera] must show that he had an interest in highlighting [Dono]'s participation in the murder or in placing [Dono] at the scene." United States v. Stantini, 85 F.3d 9, 18 (2d Cir. 1996).  The Government's case against Matera alleged that Matera lured Hydell to a club where someone else then murdered Hydell.  The evidence that the Government produced at Dono's bail hearing suggested that Matera had scolded Dono for killing Hydell in front of Matera.  See Pet'r's Post-Hr'g Br., Ex. J.  If Lichtman were to argue that Dono participated in the murder because he had the stronger motive, as Matera suggests, such an argument would only confirm the Government's account of Dono's primary participation in the

murder.  As the Court of Appeals explained when rejecting a
similar argument in Stantini, "[n]othing in [the Government's]
account or any of the other evidence presented suggested that if
[Dono] participated in the murder   . . . then [Matera] did not
participate or that his level of culpability was any less."
Stantini, 85 F.3d at 18-19.

Moreover, there is nothing in the record to suggest that
Lichtman was conflicted in pursuing any defense strategy as a
result of his preliminary discussions with Dono about Dono's
Eastern District bank burglary case, or as a result of Dono's
involvement in the Hydell murder for which Dono was not indicted
until four years later.  Lichtman testified credibly that Dono's
involvement in the Hydell murder was not the focus for him in
preparing Matera's case for trial in the summer of 2004.  Tr.
20.

**b.**

Matera also contends that Lichtman had a conflict of
interest because Lichtman had an economic incentive to convince
Matera to plead guilty so that Lichtman could enter into the new
retainer agreement with Dono.  However, this argument is not
borne out by the record.  Under Lichtman's retainer agreement
with Matera, if Lichtman represented Matera through trial, he
could earn up to an additional $125,000.  GX 14.  Under
Lichtman's retainer agreement with Dono, he stood to make the

same $125,000 if the Dono case went to trial.  GX 15.
Therefore, Lichtman had little economic incentive to convince
Matera to plead guilty so that he could sign the retainer
agreement with Dono.  Furthermore, the fact that an attorney has
a prospective client that the attorney may represent and obtain
another fee does not create an actual conflict of interest,
without more.  As the Court of Appeals for the Seventh Circuit
explained, "[There is a] presumption that the lawyer will
subordinate his pecuniary interests and honor his primary
professional responsibility to his clients in the matter at
hand."  United States v. Jeffers, 520 F.2d 1236, 1265 (7th Cir.
1975) (Stevens, J.).  See also United States v. DiCarlo, 575
F.2d 952, 957 (1st Cir. 1978).  To hold otherwise would create
an actual conflict of interest for any busy lawyer who takes on
a new client as a prior representation winds down.  Matera cites
no authority for that proposition.  Matera has specifically
disclaimed any reliance on a potential conflict of interest
because he does not seek to show prejudice, and the potential
for a new client is insufficient, without more, to establish an
actual conflict of interest.

Matera counters that Lichtman was concerned that Matera
would not pay his fees, and therefore Lichtman preferred to take
on a new client rather than risk not being paid for his work for
Matera, particularly in view of the fact that the Dono retainer

agreement provided for an immediate payment of $60,000, and reserved only $25,000 for the trial work.  However, this argument finds no support in the record.  While Matera now claims that he told Lichtman that he could not pay the trial fee, that testimony is not credible.  Tr. 201.  Lichtman does not recall such a conversation, Tr. 66-67, and Lichtman testified, with respect to his remaining fee from Matera, that "[Matera] paid.  I mean, I got paid and I don't recall having problems with him thinking that he wouldn't be able to afford the trial fee."  Tr. 93.  The only fee dispute that Lichtman recalled was that Matera objected to a bill being sent to Matera's mother.  Tr. 93.

The contemporaneous correspondence supports Lichtman's account.  Matera's August 16 letter to Lichtman mentions the bill being sent to Matera's mother, but there is no contemporaneous correspondence that indicates that Matera refused or was unable to pay Lichtman's fee.  GX 16.  Furthermore, in his initial affidavit in support of the current motion, Matera never mentioned that he had any fee dispute with Lichtman and he did not contend that Lichtman had a conflict of interest because Matera had objected to Lichtman's fee or that Lichtman wanted to obtain fees from Dono rather than Matera.  See Matera Aff., Mar. 23, 2011.  A fee dispute was something that Matera would have known of – had it existed – and yet he

did not mention it.  Moreover, the motion itself was not a pro

se motion but was brought by Ginsberg on behalf of Matera.

Finally, a fee dispute, without more, is insufficient to

constitute a conflict of interest.  O'Neil, 118 F.3d at 72.[4]

**c.**

Finally, Matera attempts to use some minor and purported

disagreements with Lichtman to show that going to trial was not

in Lichtman's best interests, and that Lichtman thus convinced

Matera to plead guilty due to Lichtman's other interests.  This

argument is also without merit.  Matera points to a letter he

wrote to Lichtman in the summer of 2004 expressing concern about

the number of times Lichtman had visited him while preparing for

trial, GX 16, and argues that such concerns demonstrate a frayed

attorney-client relationship, and that Lichtman was not truly

preparing for trial.  However, Matera's urging of Lichtman to

visit more often is a "routine disagreement" between client and

counsel that does not lend credence to Matera's claim of a

conflict.  See United States v. White, 174 F.3d 290, 296 (2d

Cir. 1999) (rejecting the existence of a conflict based on

---

[4] An alleged fee dispute as a basis for an actual conflict of interest would
also be barred by the one-year statute of limitations.  Matera plainly would
have known of a fee dispute at the time it occurred.  Matera also knew by
October 2004 that Lichtman began representing Dono shortly after Matera
pleaded guilty.  Matera could have made his argument about Lichtman's desire
to represent another client and obtain another fee at any time thereafter,
and certainly long before one year prior to filing the current § 2255
petition.

defendant's criticism of his counsel's performance).  Other than
the August 2004 letter in which Matera urges Lichtman to visit
more often, there is no contemporaneous indication that Matera
was unsatisfied with Lichtman's performance.  In fact, Matera's
statement at his plea hearing and his letters regarding both the
plea agreement and Lichtman's performance at the sentencing
hearing all indicate that Matera was satisfied with Lichtman's
performance.  See Plea Tr. 6 ("Q: Are you satisfied with your
attorney?  A: Yes, very much."); GX 18 ("I received the [PSR] . .
. I like what it says."); GX 20 ("I'm really happy . . . I know
you tried, I saw how you were pleading with this Judge.").

Accordingly, Lichtman did not have an actual conflict of
interest while representing Matera.

**2.**

Moreover, Matera failed to satisfy the second part of the
test—that there was some "plausible alternative defense
strategy" that was not taken by counsel.  Moree, 220 F.3d at 69
(quoting Winkler, 7 F.3d at 307-08).  Matera argues that he had
wanted to go to trial, and that he only pleaded guilty because
Lichtman pressured him into the plea.  However, all of the
credible evidence establishes that Matera had been encouraging
Lichtman to seek a plea deal, that he did not want to go to
trial, and that he was relatively satisfied with the deal that

he received.

Matera testified at the evidentiary hearing that he wanted to go to trial rather than accept the 20-year plea offer Lichtman presented to him, but that testimony was not credible. Matera's contemporaneous correspondence made it clear that he wanted a plea and that he wanted Lichtman to get that plea. GX 16. For example, Matera wrote to Lichtman, "I hate when you say [a plea deal's] not going to happen because, its [sic] your job to make it happen." GX 16. Lichtman testified, consistent with this correspondence, "[Matera] had wanted a [plea] deal." Tr. 72, 88. For that reason, when Lichtman informed Matera of the Government's plea offer, Matera was "[p]leased. He wanted the deal." Tr. 91. Matera's contemporaneous statements expressing disapproval with Judge Casey and with Matera's likely prospects in court support Lichtman's account of Matera's desire to avoid a trial in which he could receive a life sentence. By entering into the plea agreement, Matera limited his sentencing exposure to 20 years' imprisonment, a fact with which Matera expressed satisfaction in his letters to Lichtman. See GX 18; GX 20.

Matera argues that the fact that he had received and rejected a 20-year plea offer in April 2004, before retaining Lichtman, proves that Matera wanted to go to trial months later in August 2004. However, there is no explanation in the record for why Matera rejected that initial plea deal, and the fact

that he rejected one plea deal several months earlier does not refute the evidence that he wanted to take the deal in late August.  Circumstances had changed by August.  The trial date was closer and the Government's case had been strengthened by the fact that a co-defendant, Frank Fappiano, had pleaded guilty to participating in the Hydell murder.  Tr. 233.

Because there is no credible evidence to support Matera's contention that he pleaded guilty for any reason other than his own wishes, Matera cannot show there was a plausible alternative defense strategy that Lichtman did not pursue.[5]

Accordingly, Matera has not shown that there was a disabling actual conflict of interest between him and his counsel.

### Conclusion

The Court has carefully considered all of the arguments of the parties.  To the extent not specifically addressed above, they are either moot or without merit.  For the reasons explained above, the petitioner's motion pursuant to 28 U.S.C. § 2255 is **denied**.  The Clerk is directed to **dismiss the petition and to close this case**.

The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253 because the petitioner has failed to

---

[5] Matera must also satisfy the third part of the actual conflict test, namely that his counsel chose not to take up the alternative strategy "because of his conflict." Winkler, 7 F.3d at 309.  However, Matera has failed to show that Lichtman obtained the plea agreement because of his own alleged interests rather than because that was what Matera wanted.

make a substantial showing of the denial of a constitutional

right.

**SO ORDERED.**

**Dated: February 3, 2015**
         **New York, New York**              _____/s/_____
                                              **John G. Koeltl**
                                    **United States District Judge**